### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**REDHAWK GLOBAL, LLC,**

      **Plaintiff,**

      **v.**

                               **Case No. 2:11-cv-666**
                               **JUDGE EDMUND A. SARGUS, JR.**
                               **Magistrate Judge Mark R. Abel**

**WORLD PROJECTS INTERNATIONAL, et al.,**

      **Defendants.**

### ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction. (Doc. No. 32.) For the reasons that follow, the Court **DENIES** Defendants' Motion.

### I. BACKGROUND

Plaintiff Redhawk Global, LLC ("Redhawk") is an Ohio Limited Liability Company, with its principal place of business in Columbus, Ohio. (Am. Compl. ¶ 1; Doc. No. 4.) Redhawk is engaged in the business of brokering and financing overland shipping services. *Id.* ¶ 13. Redhawk has been involved in business transactions with two Texas corporations, World Projects International, Inc. ("WPI") and/or World Projects Services International, Inc. ("WPSI"), since 2004, and has invoiced WPI over 13 million dollars during that time. *Id.* ¶¶ 2, 3, 20, 41. WPI implements customized freight forwarding programs for various types of cargo. *Id.* ¶ 15. In approximately February 2011, Redhawk began to retrieve and deliver loads for a power plant project in Moscow, Ohio ("the Ohio Project") that it had contracted to perform for WPI. *Id.* ¶¶ 21, 29.

On June 17, 2011, Redhawk filed this case in the Franklin County, Ohio, Court of Common Pleas. (Doc. No. 3.) On July 22, 2012, Defendants removed the action to this Court based upon diversity jurisdiction. (Doc. No. 2.) Redhawk's amended complaint is on an account and for breach of contract (Counts 1 and 2) seeking $214,750.00 in damages allegedly caused by the failure of Defendants WPI and WPSI to pay Redhawk for its work on the Ohio Project. Approximately one month after this action was filed, WPI and WPSI filed for Chapter 7 bankruptcy in Texas and the automatic stay imposed under Section 362 of the Bankruptcy Code went into effect as it relates to those two Defendants. (Doc. No. 12.)

Redhawk also seeks damages relating to its causes of action for: fraud (Count 3) against Defendants John Rouse, Nicholas Jacomides and Kevin O'Shea ("the Individual Defendants"); unjust enrichment (Count 4) as to all Defendants, including Defendants World Warehouse and Distribution, Inc. ("WWDI"), JRO Holding, Inc. ("JRO"), and Interactive Logistics ("Interactive")[1] and; and fraud for piercing the corporate veil (Count 5) against the Individual Defendants and JRO. Defendants Rouse and Jacomides reside in Texas and Defendant O'Shea resides in Vermont. (Am. Compl. ¶¶ 7-9.) JRO is a Delaware holding

---

[1] On June 15, 2012, the parties filed a Stipulation of Dismissal in which they purportedly utilized Federal Rule of Civil Procedure 41(a) to dismiss with prejudice all claims pending against WWDI and Interactive. (Doc. No. 63.) Federal Rule of Civil Procedure 41(a) is only available to dismiss entire actions, not single claims. Fed. R. Civ. P. 41(a)(1)(A)(ii) ("the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared"); *see also Barrientos v Ut-Battelle, LLC*, 284 F. Supp.2d 908, 916 (S.D. Ohio 2003) and *Letherer v. Alger Group, L.L.C.*, 328 F.3d 262, 265-66 (6th Cir. 2003), *recognized as overruled on other grounds in Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633, 636 (6th Cir. 2008). Rule 15(a), however, permits a party to amend its pleading by leave of court, which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Construing the parties' Stipulation as a motion to amend under Rule 15, the Court **GRANTS** the motion and hereby amends the complaint to reflect the dismissal of all of the claims filed against WWDI and Interactive.

2

company that is controlled by the Individual Defendants, its principal shareholders. *Id.* ¶¶ 5, 14.
WPI and WPSI are subsidiaries of JRO and are controlled by the Individual Defendants. *Id.* ¶¶
16, 19.

The Individual Defendants and JRO ("the Moving Defendants") have moved to dismiss
this action against them for lack of personal jurisdiction. (Doc. No. 32.) That motion is ripe for
disposition. (Doc. Nos. 52, 55.)

The parties moved to stay discovery pending this Court's decision on the personal
jurisdiction issue, which the Court granted. (Doc. Nos. 66, 68.)

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of cases for lack of
personal jurisdiction over a defendant. In considering a properly supported motion to dismiss for
lack of personal jurisdiction, a district court has discretion to either decide the motion upon the
affidavits alone, permit discovery in aid of deciding the motion, or conduct an evidentiary
hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458
(6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir.
1989)). Here, no party has requested further discovery nor an evidentiary hearing and this Court
finds that neither is necessary for it to determine the issue at hand.

A plaintiff bears the burden of establishing the existence of personal jurisdiction. *Estate
of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing
*Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). However, where a Rule 12(b)(2)
motion is decided solely on written submissions and affidavits, as here, "the plaintiff's burden is
'relatively slight,' *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (internal

3

quotation marks omitted) and 'the plaintiff must make only a *prima facie* showing that personal

jurisdiction exists in order to defeat dismissal,' *Theunissen*, 935 F.2d [at 1458]." *Id.*  Indeed,

"[t]he pleadings and affidavits submitted must be viewed in a light most favorable to" the

plaintiff, and the court "should not weigh 'the controverting assertions of the party seeking

dismissal.'" *Id.* (citing *Theunissen*, 935 F.2d at 1459).  This rule is in place because the United

States Court of Appeals for the Sixth Circuit has stated that it wants "to prevent non-resident

defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all

jurisdictional facts[.]" *Theunissen*, 935 F.2d at 1459.

### III. ANALYSIS

"A Federal district court sitting in diversity must apply the law of the forum state to

determine whether it may exercise jurisdiction over the person of a non-resident defendant."

*Theunissen*, 935 F.2d at 1459 (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980);

*In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972)).

Constitutional concerns of due process, however, limit the application of this principle.  *Id.*

(citing *Welsh*, 631 F.2d at 439).  Here, the Moving Defendants contend that Redhawk cannot

establish either general or specific personal jurisdiction.  Redhawk does not contest that this

Court lacks general personal jurisdiction[2] over the Moving Defendants.

The Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with

federal constitutional limits." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)

(noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to

---

[2]The courts in this District are split on whether general personal jurisdiction is available
under Ohio law.  *See William F. Shea, LLC v. Bonutti Research, Inc.*, No. 2:10-cv-615, 2011
U.S. Dist. LEXIS 1752, at *36-40 (S.D. Ohio Jan. 7, 2011) (comparing cases).

4

the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236 (Ohio 1994) (*per curiam*)). "Accordingly, 'when Ohio's long-arm statute is the basis for personal jurisdiction, the personal jurisdiction analysis requires separate discussions of whether the defendant is amenable to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met.'" *Estate of Thomson*, 545 F.3d at 361 (citing *Walker v. Concoby*, 79 F. Supp. 2d 827, 831 (N.D. Ohio 1999)).

## A. State Law Analysis

Before the Court considers whether the Moving Defendants' contacts bring them within the reach of Ohio's long-arm statute, it must determine which of these Defendants' contacts are relevant to the analysis. *See MedChoice Fin., LLC v. ADS Alliance Data Sys.*, No. 2:11-cv-212, 2012 U.S. Dist. LEXIS 38778, at *10-25 (S.D. Ohio March 22, 2012) (following same procedural analysis). Redhawk contends that the Court should consider the Moving Defendants' actions taken in their capacities as representatives of WPI and WPSI. The Moving Defendants base their contentions on consideration of their contacts in their personal capacity and do not address Redhawk's arguments related to any actions they have allegedly taken in their representative capacity. In its amended complaint and its opposition to Defendants' Motion to Dismiss, Redhawk asserts personal jurisdiction is properly exercised by this Court over the Moving Defendants pursuant to the alter ego theory of personal jurisdiction. Specifically, Redhawk posits that the Moving Defendants are the "alter ego" of WPI and WPSI, which permits this Court to "'pierce the corporate veil' so as to obtain personal jurisdiction over [them] based on acts taken in [their] representative capacity." *Id.* (citation omitted).

5

### 1. Alter Ego Liability

Ohio courts use a three-pronged test to determine whether a court should pierce the

corporate veil for purposes of a personal jurisdiction analysis. *S&R Recycling*, 195 Ohio App. 3d

744, 2011 Ohio 3371 ¶ 28 (citing *Dombroski v. Wellpoint, Inc*., 119 Ohio St. 3d 506, 2008 Ohio

4827 ¶ 22; *Belvedere Condominium Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274,

289 (1993)). Alter ego liability exists where: (1) control over the corporation by those to be held

liable was so complete that the corporation has no separate mind, will, or existence of its own,

(2) control over the corporation by those to be held liable was exercised in such a manner as to

commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3)

injury or unjust loss resulted to the plaintiff from such control and wrong. *Id.*

Relying on one of its sister Circuit's analysis, the Sixth Circuit has explained that

> federal courts have consistently acknowledged that it is compatible with due process
> for a court to exercise personal jurisdiction over an individual or a corporation that
> would not ordinarily be subject to personal jurisdiction in that court when the
> individual or corporation is an alter ego or successor of a corporation that would be
> subject to personal jurisdiction in that court.

*Estate of Thomson*, 545 F.3d at 362 (citing *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d

640, 653 (5th Cir. 2002) (collecting cases)). Here, there is no dispute that this Court may

properly exercise personal jurisdiction over WPI and/or WPSI.

### a. Individual Defendants

As to the Individual Defendants:

> Ohio courts have identified several factors relevant to a finding that the corporate veil
> should be pierced, including: (1) grossly inadequate capitalization, (2) failure to
> observe corporate formalities, (3) insolvency of the debtor corporation at the time the
> debt is incurred, (4) shareholders holding themselves out as personally liable for
> certain corporate obligations, (5) diversion of funds or other property of the company

6

for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Coast to Coast Health Care Servs., Inc. v. Meyerhoffer*, No. 2:10-cv-734, 2011 U.S. Dist. LEXIS 65181, at \*15 (S.D. Ohio) (citing *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App. 3d 417, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991) (the court used these "factors in determining whether to disregard the corporate entity and impose individual liability on the shareholder")).

In the instant action, the Individual Defendants are the 100% owners of WPI and they control both it and WPSI. Redhawk alleges that the Individual Defendants participated in corporate fraud by misappropriating or converting monies to themselves from WPI that should have been for corporate use. (Am. Compl. ¶¶ 44-48, 69.) Redhawk further alleges that WPI was inadequately capitalized and that it and WPSI were insolvent or virtually insolvent at the time they incurred the debt to Redhawk. *Id.* ¶¶ 81, 86, 87. In addition, Redhawk avers that the Individual Defendants reached into Ohio by email, phone and facsimile regarding payments due to Redhawk for work done on the Ohio Project. (Deboo Aff.[3] ¶¶ 32, 34-38; Doc. No. 52-1.) Finally, Redhawk asserts that the Individual Defendants knowingly made misrepresentations regarding these payments that were due to Redhawk so as to prevent paying WPI's and WPSI's debt to Redhawk. (Am. Compl. ¶ 91). The Court finds that these factors are sufficient to pierce the corporate veil for purposes of a personal jurisdiction analysis. *See Cent. Inv. Corp. v. Mut. Leasing Assocs.*, 523 F. Supp. 74, 78-79 (S.D. Ohio 1981) (in similar circumstances the court set aside the separate corporate entities' existence and held the individual defendants liable for the debt on the basis that the corporate entities were alter egos of the individuals).

---

[3]Erach Deboo is a Managing Partner and owner of Redhawk. (Deboo Aff. ¶ 2.)

### b. JRO

WPI and WPSI are subsidiaries of JRO.  (Am. Compl. ¶ 16.)  Redhawk seeks to pierce JRO's corporate veil under the alter ego theory of personal jurisdiction applicable to parent-subsidiary relationships.  "The alter-ego theory of personal jurisdiction, in the parent-subsidiary context, provides that 'a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *Estate of Thomson*, 545 F.3d at 362 (citing *Danton v. Innovative Gaming Corp.*, 246 F. Supp. 2d 64, 72 (D. Me. 2003)).

"In determining whether a subsidiary is an alter ego of the parent corporation, Ohio courts consider factors such as whether (1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent." *Id.* (citing *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05 CV 2205, 2006 WL 2225821, *6, 2006 U.S. Dist. LEXIS 53397 (N.D. Ohio Aug. 2, 2006)).  The Sixth Circuit has considered additional factors such as (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation. *Id.* at 362-63 (citation omitted).

Here, it is undisputed that the Individual Defendants own WPI and are the principal shareholders of JRO and that JRO is the 100% shareholder of WPSI.  Redhawk alleges that the Individual Defendants "control" WPSI "and JRO in such a way that the corporate entities have no separate mind." (Am. Compl. ¶¶ 14-19, 85.)  Additionally, during the time that Redhawk

8

communicated with the Individual Defendants about the Ohio Project, these defendants answered the telephone and communicated from the corporate offices of WPI, WPSI and JRO interchangeably. (Deboo Aff. ¶ 40.) Finally, Redhawk alleges that the proceeds that WPI received for the Project were transferred to JRO and were comingled with the finances of JRO. (Am. Compl. ¶¶ 45-47, 90, 91.) The Court finds that these allegations and averments are sufficient to pierce the corporate veil under the alter ego theory of personal jurisdiction.

### c. WPI and WPSI

Because the Moving Defendants are properly considered the alter ego of WPI and WPSI for purposes of a personal jurisdiction analysis, the Court may consider these two corporations' contacts to determine whether it may exercise *in personam* jurisdiction over the Moving Defendants. *Estate of Thomson*, 545 F.3d at 362 (permitting the "exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court"); *Coast to Coast Health Care Servs., Inc.*, 2011 U.S. Dist. LEXIS 651181, at *14 ("It is proper for a court to obtain jurisdiction over a corporate defendant the court does not have personal jurisdiction over if that corporate defendant is the alter ego of a corporate body over which the court does have personal jurisdiction.").

As stated *supra*, the Moving Defendants do not dispute that this Court may properly exercise *in personam* jurisdiction over WPI and WPSI. The Court now reviews these two corporations' contacts relevant to a personal jurisdiction analysis. In October 2010, Redhawk began to negotiate terms concerning pricing and rates for the Ohio Project with representatives of WPI and WPSI. (Am. Compl. ¶¶ 25-27); (Deboo Aff. ¶15). Representatives of WPI and WPSI

initiated these correspondences with Redhawk and numerous emails and telephone calls occurred

over the next four months to finalize the deal whereby Redhawk would provide transportation

and logistics services for the Ohio Project. (Deboo Aff. ¶ 17.) The shipments were cosigned at

an Ohio location and delivered to an Ohio location for use in a power plant located in Moscow,

Ohio. *Id.* at ¶16. Redhawk sent a final packing list rates to WPI in or around December 2010 for

the Ohio Project. (Am. Compl. ¶ 28.)

On January 4, 2011, WPI/WPSI awarded the Ohio Project contract to Redhawk and

emailed Redhawk in Ohio with the contract. *Id.* at ¶ 18. Throughout the project, WPI and WPSI

representatives continued to initiate communications with Redhawk at its Ohio location via email

and telephone regarding the progress of the Ohio Project. *Id.* at ¶ 19. Throughout the

relationship, WPI and WPSI communicated hundreds of times about various aspects of the Ohio

Project via email, telephone and facsimile to Redhawk in Ohio. *Id.* at ¶20.

### 2. Ohio's Long-Arm Statute

Ohio's long-arm statute provides, in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly
or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

. . .

(3) Causing tortious injury by an act or omission in this state;

. . .

(6) Causing tortious injury in this state to any person by an act outside this
state committed with the purpose of injuring persons, when he might
reasonably have expected that some person would be injured thereby in
this state;

Ohio Rev. Code § 2307.382.

The Moving Defendants offer no argument that if the Court considers their contacts with Ohio in their representative capacities, personal jurisdiction is not appropriate. Redhawk asserts that jurisdiction over the Moving Defendants is proper under Ohio Revised Code §§ 2307.382(A)(1), (A)(3), and (A)(6). Section 2307.382 (A)(1) is "very broadly worded" and encompasses defendants who are "transacting any business" in Ohio, even if the defendant has never visited the state. *Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 75 (1990). "Ohio courts (including this Court interpreting Ohio law) have found that an individual 'transacted business' within the meaning of § 2307.382 when he/she corresponded regularly with an Ohio company and regularly emailed and called plaintiffs in Ohio." *MedChoice Fin., LLC v. ADS Alliance Data Sys.*, 2012 U.S. Dist. LEXIS 38778, at *16-17 (citing as example *Nat'l City Comm'l Capital, Co. v. Evertile Flooring, Inc., Hamilton C.P. No. A0911906*, 2010 Ohio Misc. LEXIS 489, at *3 (Jan. 6, 2010) (finding § 2307.382(A)(1) satisfied where "[d]efendants had numerous contacts with Plaintiffs through e-mails and telephone calls, all to Ohio"); *NPF XII, Inc. v. Special Care, Inc.*, No. C2-00-1048, 2001 U.S. Dist. LEXIS 24347, at *9 (S.D. Ohio, July 17, 2001) (finding § 2307.382(A)(1) satisfied when defendant, among other things, "conducted telephone calls and other correspondence with the plaintiff, which she knew to be an Ohio company")).

As indicated above, in their representative capacity the Moving Defendants conducted telephone calls and other correspondence with Redhawk, which they knew was in Ohio, about the Ohio Project that was also in Ohio. Moreover, the Moving Defendants do not dispute that the contacts between WPI/WPSI and Redhawk can now be imputed to the Moving Defendants based on their alter-ego status for the purpose of personal jurisdiction. *See Estate of Thomson*, 545

11

F.3d at 362. Consequently, the Court concludes that jurisdiction over the Moving Defendants is appropriate under § 2307.382(A)(1) and does not consider their arguments concerning §§ 2307.382(A)(3) and (A)(6). The Court next determines whether jurisdiction over the Moving Defendants comports with federal due process requirements.

### 2. Federal Due Process

To comply with federal due process, a court may exercise personal jurisdiction over a non-resident defendant only if such jurisdiction arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). The non-resident defendant must have conducted himself so that he could "reasonably anticipate being haled into court" in Ohio. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This requirement is met if the defendant "purposefully directed his activities at residents of the forum . . ., and the litigation results from alleged injuries that 'arise out of or relate to' those activities. . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

The Sixth Circuit has employed three criteria for determining whether *in personam* jurisdiction comports with due process: (1) the defendant must personally avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) (citing *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110,

1116 (6th Cir. 1994); *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Under *Southern Mach. Co. v. Mohasco Indus., Inc.*, the Court must first decide if the Moving Defendants "purposefully availed" themselves of the privilege of acting in Ohio or causing a consequence in Ohio. A "consequence" in the forum state includes "effects on the 'general conduct of business' in Ohio which 'may not be readily quantifiable,' but are 'nonetheless real.'" *Health Care Industries, Inc. v. Logan Park Care Center, Inc.*, 573 F. Supp. 360, 363 (S.D. Ohio 1983) (citing *Davis H. Elliot Co., Inc. v. Caribbean Utilities, Ltd.*, 513 F.2d 1176, 1181-82 (6th Cir. 1975) (*per curiam*)). The Court finds that Redhawk has met its relatively slight burden of establishing that the Moving Defendants' acts of sending correspondences allegedly containing fraudulent misrepresentations into Ohio via telephone and email shows purposeful availment of the privilege of acting in Ohio and caused consequences in Ohio.

"The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Janssen*, 270 F.3d at 332 (citing as examples *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 282 (7th Cir. 1990)). Redhawk contends that the Moving Defendants intentionally defrauded it in telephone calls and facsimiles directed to Redhawk on behalf of WPI and/or WPSI about the monies due to Redhawk from WPI and/or WPSI. "When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may

13

constitute purposeful availment." *Id.* "It is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'" *Id.* (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1301 (6th Cir. 1989)). Furthermore, the actions of sending false information into Ohio by phone and fax had foreseeable effects in Ohio and were directed at a business in Ohio about contracts and completion of contractual work of shipping goods into Ohio for an Ohio power plant project. These false representations are the heart of the fraud and unjust enrichment claims against the Moving Defendants -- they were not merely incidental communications sent by the Moving Defendants into Ohio. *See id.* (finding same under analogous circumstances).

Additionally, the Court may consider the purposeful availment of WPI and WPSI. In that review, the Moving Defendants do not dispute, nor could they, that WPI and WPSI purposely availed themselves of the privilege of acting in Ohio and causing consequences in Ohio. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio.") (citing *Burger King Corp.*, 471 U.S. at 475-76; *Compuserve*, 89 F.3d at 1263-64; *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (1988); *In- Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 228, 235 (1972)).

The second *Mohasco* requirement -- that the cause of action arise from the defendants' forum state activities -- is also met here. The Moving Defendants argue that they did not have sufficient minimum contacts with Ohio because they never maintained any type of physical presence in the state. However, "when a foreign defendant purposefully directs communications

14

into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state." *Janssen*, 270 F.3d at 333. Here, the Moving Defendants did not merely solicit business in the state via a telephone call or an email. Instead, they engaged in allegedly fraudulent communications and these same communications form the bases for Redhawk's tort claims. The alleged misrepresentations are the elements of the cause of action itself.

As the *Janssen* court highlighted, "physical presence is not the touchstone of personal jurisdiction." *Id.* "It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state [and national] lines, thus obviating the need for physical presence within a State when business is conducted." *Id.* (citing *Burger King*, 471 U.S. at 476).

Moreover, again the Court looks to the actions of WPI and WPSI because of Redhawk's successful piercing of the corporate veil for the purpose of the personal jurisdiction analysis. The Moving Defendants do not dispute, nor could they, that this case arose from their contacts in Ohio. *Cole*, 133 F.3d at 436 ("Furthermore, if the cause of action is for breach of that contract, []then the cause of action naturally arises from the defendant's activities in Ohio.") (citing *Compuserve*, 89 F.3d 1257 at 1267; *In- Flight Devices*, 466 F.2d at 229.)

Finally, *Mohasco* requires the Court to determine whether the contacts are substantial enough to make it reasonable to subject the Moving Defendants to the personal jurisdiction of the Ohio courts. *Janssen*, 270 F.3d at 333. "When a court finds that a defendant has purposefully availed itself of the privilege of conducting activities within Ohio and the cause of action arose from that contact, it is presumed that the assertion of personal jurisdiction is proper." *Norcold*,

15

*Inc. v. Greg Lund Prods.*, 109 F. Supp. 2d 819, 826 (S.D. Ohio 2000) (citing *Cole*, 133 F.3d 433;

*American Greetings Corp.*, 839 F.2d at 1170 (when first two elements met, an inference arises

that the third is also met)). "A court must consider several factors in this context, including 'the

burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief,

and the interest of other states in securing the most efficient resolution of controversies.'" *Id.*

(quoting *American Greetings Corp.*, 839 F.2d at 1169-70).

Although this case is in federal court, "the existence of federal avenues for relief in Ohio

still serves Ohio's interest in protecting its residents' legal options." *Youn v. Track, Inc.*, 324

F.3d 409, 419 (6th Cir. 2003) (citing *Burger King*, 471 U.S. at 478) (noting that forum state had

"manifest interest" in providing a forum for its residents); *McGee v. Int'l Life Ins. Co.*, 355 U.S.

220, 223 (1957) ("It cannot be denied that California has a manifest interest in providing

effective means of redress for its residents when their insurers refuse to pay claims.")). It would

undoubtedly burden the Moving Defendants to defend this case from Texas and Vermont, "but

'when minimum contacts have been established, often the interests of the plaintiff and the forum

in the exercise of jurisdiction will justify even the serious burdens placed on the alien

defendant.'" *Id.* at 419-20 (citing *Asahi*, 480 U.S. at 114). Thus, the Court determines that it is

reasonable to require the Moving Defendants to defend themselves in this Court. And, it is not

disputed that is is reasonable to hail WPI and WPSI to court in this state, which may be imputed

to the Moving Defendants.

Accordingly, when viewing the pleadings and affidavits on file in the light most favorable

to Redhawk, the Court finds that Redhawk has met its relatively slight burden of establishing a

*prima facie* showing of personal jurisdiction sufficient to defeat dismissal.

16

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' Motion to Dismiss for Lack of Jurisdiction. (Doc. No. 32.)

**IT IS SO ORDERED.**


_12-4-2012_
**DATE**                                    EDMUND A. SARGUS, JR.
                                            **UNITED STATES DISTRICT JUDGE**