UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

REDHAWK GLOBAL, LLC,

     Plaintiff,

                              Case No. 2:11-cv-666

v.                          JUDGE EDMUND A. SARGUS, JR.
                              Magistrate Judge Mark R. Abel

WORLD PROJECTS INTERNATIONAL, et al.,

     Defendants.

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Dismiss the Complaint of Intervenor Rodney Tow for Lack of Personal Jurisdiction. (Doc. No. 77.) For the reasons that follow, the Court **DENIES** the Defendants' Motion.

## I. BACKGROUND

World Projects International, Inc. ("WPI") and World Projects Services International, Inc. ("WPSI") are Texas Corporations. (Am. Compl. ¶ 1 (Doc. No. 4.)) Since 2004, WPI and WPSI have been involved in business transactions with Redhawk Global, LLC, ("Redhawk"), an Ohio Limited Liability Company with a principal place of business in Columbus, Ohio. *Id.* ¶¶ 2, 3, 20, 41. In approximately February 2011, Redhawk began to retrieve and deliver loads for a power plant project in Moscow, Ohio, that it had contracted to perform for WPI. *Id.* ¶¶ 21, 29. Redhawk subsequently filed the present case, seeking damages allegedly caused by the failure of WPI and WPSI to pay Redhawk for its work on the Ohio power plant project. (Doc. No. 4.)

On July 27, 2011, WPI and WPSI filed petitions for bankruptcy under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court for the Southern District of Texas in Houston. (Mot. Proposed Intervenor ¶ 2 (Doc. No. 67.)) The Bankruptcy Court for the Southern District of Texas appointed Intervenor Plaintiff Rodney Tow ("Intervenor Plaintiff") as the Chapter 7 trustee in the jointly administered bankruptcy cases of WPI and WPSI. *Id.*

On October 5, 2012, the Intervenor Plaintiff filed a complaint with this Court against Defendants JRO Holding, Inc. ("JRO"), Captain Nicholas Jacomides ("Jacomides"), John Rouse ("Rouse"), and Kevin O'Shea ("O'Shea"). (Compl. of Intervenor (Doc. No. 76.)) The Intervenor Plaintiff alleges that Defendants Jacomides, Rouse, and O'Shea, as the directors and officers of WPI and WPSI, owed a fiduciary duty and a duty of care to the debtors of WPI and WPSI. (Compl. of Intervenor ¶ 83.)

The Intervenor Plaintiff asserts that the Defendants breached their fiduciary duty (Count 1) and acted negligently (Count 2) in breach of their duty of care; as such, the Intervenor Plaintiff seeks compensatory damages in excess of $500,000, as well as punitive damages, plus costs, interest, and attorney's fees. *Id.* ¶¶ 82–94. The Intervenor Plaintiff also seeks the avoidance and recovery of any preferential or fraudulent transfers (Counts 4 through 9) from WPI or WPSI to or for the benefit of JRO, Jacomides, Rouse, or O'Shea. *Id.* ¶¶ 112–153. In Counts 10 and 11, the Intervenor Plaintiff alleges that JRO, Jacomides, Rouse, and O'Shea exercised improper control over WPSI and WPI such that this Court should pierce WPSI's and WPI's corporate veils, declare that WPSI is an alter ego of JRO, and declare that WPI is an alter ego of Jacomides, Rouse, and O'Shea. *Id.* ¶¶ 154–163. The Intervenor Plaintiff's remaining counts include a claim for the substantive consolidation of JRO and WPSI (Count 3) and a claim that Jacomides, Rouse, and O'Shea should not be allowed to make claims against the WPI

2

bankruptcy estate unless they repay the amounts claimed by the Intervenor Plaintiff as preferential and fraudulent transfers (Count 12). *Id.* ¶¶ 95–111, 164–166.

Defendants JRO, Jacomides, Rouse, and O'Shea have moved to dismiss the Intervenor Plaintiff's complaint for lack of personal jurisdiction. (Def.'s Mot. Dismiss (Doc. No. 77.)) That motion is ripe for disposition. (Doc. Nos. 78, 79.)

## II. STANDARD

In deciding a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may decide the motion "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (internal quotation marks omitted). Here, no party has requested further discovery or an evidentiary hearing, and this Court finds that neither is necessary for it to determine the issue at hand. Thus, the Court will decide this motion on the basis of affidavits alone.

A plaintiff bears the burden of establishing the existence of personal jurisdiction. *Id.* However, in the present case, where a Rule 12(b)(2) motion is decided solely on written submissions and affidavits, "the burden of the plaintiff is relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (internal quotation marks omitted), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

3

## III. ANALYSIS

### A. Determining the Proper Personal Jurisdiction Analysis

The Defendants assert that they lack sufficient contacts with the State of Ohio for this Court to exercise personal jurisdiction over them. *Id.* at 3. Specifically, the Defendants contend that their communications with Redhawk are insufficient to establish minimum contacts under Ohio's Long-Arm Statute because Redhawk initiated those contacts. *Id.* at 4–5. According to the Defendants, "even a response by a non-resident to a communication or email initiated by a resident of the forum state is insufficient to confer [personal] jurisdiction" over the non-resident. *Id.* at 5; *see Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). The Defendants' argument is not well taken.

The Defendants' proposition may be true in matters where a federal district court exercises personal jurisdiction by way of diversity jurisdiction. *See Kerry Steel*, 106 F.3d at 148 ("A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so."); *Am. Elec. Power Serv. Corp. v. Cal. Power Exch. Corp.*, No. C2-01-0131, 2001 WL 1842474, at *4 (S.D. Ohio Mar. 2, 2001) ("Because this Court's jurisdiction is based on diversity of citizenship, . . . the Court looks to the law of the State of Ohio."). However, as the Intervenor Plaintiff correctly points out, the personal jurisdiction inquiry does not require a state long arm statute analysis when a district court exercises federal question jurisdiction and the underlying action stems from a federal statute providing for nationwide service of process. (Intervenor's Mem. in Opp. to Def.'s Mot. to Dismiss 4 (Doc. No. 78)); *see Med. Mut. Of Ohio v. deSoto*, 245 F.3d 561, 567–68 (6th Cir. 2001) ("[W]hen a federal court exercises jurisdiction pursuant to a national service of process

4

provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States."). Relevant to this action, Bankruptcy Rule 7004 provides that the exercise of personal jurisdiction over a defendant is proper if a plaintiff adheres to the Rule's nationwide service of process requirements. Fed. R. Bankr. P. 7004.

The Defendants reply by citing *NGS American, Inc. v. Jefferson*, 218 F.3d 519, 521 (6th Cir. 2000), for the proposition that "service of process does not eliminate the requirement of minimum contacts necessary to establish personal jurisdiction." (Def.'s Mot. Dismiss 6.) *NGS American* does not stand for such a proposition. *See NGS Am.*, 218 F.3d at 524 & n.5. NGS American, Inc. ("NGS") was a Michigan corporation that acted as a third-party administrator of a Florida medical benefit plan. *Id.* at 521. Upon learning that the spouse of a deceased plan beneficiary intended to file suit under Florida state law for NGS's failure to monitor and treat appropriately, NGS sued the spouse in federal court in Michigan "seeking a declaration that any state-court claims would be preempted" under ERISA. *Id.* In *NGS American*, the Sixth Circuit affirmed the district court's dismissal of NGS's suit for lack of personal jurisdiction. *Id.* at 530–31. However, the Sixth Circuit did not affirm the dismissal of NGS's suit because it did not recognize ERISA's nationwide service of process provision; instead, the Sixth Circuit affirmed the dismissal because "NGS's current action [was] not brought under ERISA." *Id.* at 530. As the *NGS American* court explained, "we likely would have to find personal jurisdiction in this case if NGS's action truly were brought under ERISA." *Id.* at 524 n.5.

The Supreme Court of the United States has not definitively determined whether a party's minimum contacts with the United States suffice to meet the Fifth Amendment's due process requirements in the context of federal statutes providing for nationwide service of

5

process. *See NGS Am.*, 218 F.3d at 524 & n.5. The circuit courts of appeal have split on the issue. *See id.* Yet, in spite of this uncertainty among the circuits, the Sixth Circuit has stated that the weight of its precedent "supports acceptance of the national contacts approach." *Id.*; *see Rieser v. Milford (In re Chari)*, 276 B.R. 206, 210 (Bankr. S.D. Ohio 2002) ("[T]he Sixth Circuit holds that when a federal court sitting with federal question jurisdiction exercises personal jurisdiction pursuant to a national service of process provision, its jurisdiction is nationwide and it need not rely on a forum state's long-arm statue to establish extra-territorial jurisdiction outside the forum state.").

Constitutional due process prevents courts from subjecting an individual to extra-territorial jurisdiction in the absence of a relationship between the individual and the sovereign asserting jurisdiction. *Med. Mut. Of Ohio*, 245 F.3d at 567. As the Sixth Circuit has explained, a federal court sitting pursuant to federal question jurisdiction acts in accordance with constitutional due process when the court exercises personal jurisdiction over a United States citizen based on a federal statute authorizing nationwide service of process. *Id.* In the context of a federal statute authorizing nationwide service of process, the exercise of personal jurisdiction over an out-of-state United States citizen does not offend the constitutional due process right because the citizen has a sufficient relationship with the sovereign asserting jurisdiction—the United States. *Id.* at 567–68. Thus, if a federal statute authorizing nationwide service of process applies to the present proceeding, then this Court will look to the Defendants' minimum contacts with the United States to determine whether the exercise of personal jurisdiction over the Defendants is proper.

The Bankruptcy Rules are established under a federal statute and authorize nationwide service of process. Consequently, with respect to the personal jurisdiction inquiry, this Court

6

must determine if the Bankruptcy Rules apply to the present proceeding. *See In re Chari,* 276
B.R. at 210. The Defendants mistakenly contend that the application of the Bankruptcy Rules
has no impact on this Court's personal jurisdiction analysis. *See* (Def.'s Mot. Dismiss 6–7.) As
the Intervenor Plaintiff correctly points out, the applicability of the Bankruptcy Rules determines
the relevant test for the exercise of personal jurisdiction over the Defendants. (Intervenor's Mem.
in Opp. to Def.'s Mot. to Dismiss 8–11); *see In re Chari,* 276 B.R. at 210. If the Bankruptcy
Rules do not apply to this action then the test for personal jurisdiction is the existence of
minimum contacts between the Defendants and the State of Ohio sufficient to satisfy Ohio's
Long-Arm statute and the Due Process Clause of the United State Constitution. *See Southern
Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). If, however, the
Bankruptcy Rules—and Bankruptcy Rule 7004(f), specifically—do apply to this action then the
test for personal jurisdiction is the existence of minimum contacts between the Defendants and
the United States. *See Med. Mut. Of Ohio*, 245 F.3d at 567–68; *In re Chari,* 276 B.R. at 210.

## 1. Applicability of the Bankruptcy Rules

To decide whether the Bankruptcy Rules apply to the present proceeding, the Court must
make two determinations. First, the Court must determine if the present proceeding is brought
"under title 11 of the United States Code" and thus whether the Court has proper subject matter
jurisdiction under Title 11 to hear the proceeding. *See* Fed. R. Bankr. P. 1001 (The Bankruptcy
Rules "govern procedure in cases under title 11 of the United States Code."); *cf. NGS Am.*, 218
F.3d at 524 (explaining that a court cannot exercise personal jurisdiction under ERISA's
nationwide service of process provision unless the court has proper jurisdiction over the case
under ERISA). Second, because the parties disagree as to whether the Southern District of Ohio
is a proper location for the Intervenor Plaintiff to have filed his present action, the Court will

determine whether the Intervenor Plaintiff's filing complies with the filing requirements of Bankruptcy Rule 5005(a). *See* Fed. R. Bankr. P. 5005(a).

### a. Subject Matter Jurisdiction Under Title 11

To apply the Bankruptcy Rules to the present proceeding, this Court must have proper subject matter jurisdiction under Title 11 to hear the case. *See* Fed. R. Bankr. P. 1001; *cf. NGS Am.*, 218 F.3d at 524. The jurisdictional provisions relevant to this action are 28 U.S.C. § 1331 and 28 U.S.C. § 1334(b). Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Section 1334(b) elucidates the district courts' grant of jurisdiction with respect to bankruptcy proceedings, stating that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *see Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1240–41 (7th Cir. 1990) (explaining that the Bankruptcy Rules apply to cases and proceedings before district judges or bankruptcy judges). Thus, this Court possesses subject matter jurisdiction under Title 11 to hear the present action if the claims in this proceeding "aris[e] under" Title 11 or are "related to" a case under Title 11. *See id.*

Jurisdiction "arising under title 11" encompasses those proceedings that involve a cause of action created or determined by a statutory provision of Title 11. *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991). As such, proceedings arising under Title 11 include actions to avoid fraudulent transfers or obligations as well as actions seeking the recovery of fraudulently transferred property (or its value). *Bavelis v. Doukas (In re Bavelis)*, 453 B.R. 832, 851–52 (Bankr. S.D. Ohio 2011); *GEX*

8

*Ky., Inc. v. Wolf Creek Collieries Co.* (*In re GEX Ky., Inc.*), 85 B.R. 431 (Bankr. N.D. Ohio 1987).

With regard to proceedings related to cases under Title 11, the Sixth Circuit directs that a proceeding is "related to" a case under Title 11 if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Wolverine Radio Co.*, 930 F.2d at 1142 (quoting *Pacor, Inc. v. Higgins* (*In re Pacor*), 743 F.2d 984, 994 (3d Cir. 1984)). This broad test encompasses any claim that affects the debtor's rights and liabilities and impacts, in any way, the handling and administration of the bankrupt estate. *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002); *Dow Corning Corp. v. O'Brien* (*In re Dow Corning Corp.*), 86 F.3d 482, 489 (6th Cir. 1996).

In the present proceeding, the Intervenor Plaintiff's complaint against the Defendants falls within 28 U.S.C. § 1334(b)'s jurisdictional grant. *See In re Wolverine Radio Co.*, 930 F.2d at 1142, 1144. The Intervenor Plaintiff lays out twelve counts against the Defendants. (Compl. of Intervenor ¶¶ 82–166.) Of these, seven counts arise under Title 11. Count four, for the avoidance of preferential transfers, (Compl. of Intervenor ¶¶ 112–121), arises under section 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(b) ("[T]he trustee may avoid any transfer of an interest of the debtor in property . . . ."). Counts five, seven, and nine, for the recovery of preferential and fraudulent transfers, (Compl. of Intervenor ¶¶ 122–127, 135–140, 148–153), arise under section 550(a) of the Bankruptcy Code. 11 U.S.C. § 550(a) ("[T]o the extent that a transfer is avoided under . . . this title, the trustee may recover, for the benefit of the estate, the property transferred . . . ."). Counts six and eight, for the avoidance of fraudulent transfers, (Compl. of Intervenor ¶¶ 128–134, 141–147), arise under section 548. 11 U.S.C. § 548. Finally, count twelve for the

9

disallowance of claims, (Compl. of Intervenor ¶¶ 164–166), arises under section 502(d). 11 U.S.C. § 502(d).

The remaining counts in the Intervenor Plaintiff's complaint fall within 28 U.S.C. § 1334(b)'s jurisdictional grant because they are related to the Intervenor Plaintiff's case under Title 11. The Intervenor Plaintiff's remaining counts include charges of breach of fiduciary duties, negligence, substantive consolidation, and piercing the corporate veil and alter ego. (Compl. of Intervenor ¶¶ 82–111, 148–163.) Each of these counts "could conceivably have . . . effect on the estate being administered in bankruptcy" by the Intervenor Plaintiff. *See In re Wolverine Radio Co.*, 930 F.2d at 1142. Any recovery received under these counts would represent an asset that could be distributed to the creditors of the bankrupt estate. *Browning*, 283 F.3d at 773. As such, all of the counts in the Intervenor Plaintiff's complaint either "aris[e] under" Title 11 or are "related to" a case under Title 11 and are therefore properly heard by this Court under Title 11. *See* 28 U.S.C. § 1334(b).

### b. Filing Requirements Under Bankruptcy Rule 5005(a)

The Intervenor Plaintiff asserts that the Bankruptcy Rules apply to the present proceeding in part because the Intervenor Plaintiff acted in accordance with Bankruptcy Rule 5005(a) by filing this proceeding in the Southern District of Ohio. (Intervenor's Mem. in Opp. to Def.'s Mot. to Dismiss 7.) According to the Intervenor Plaintiff, filing in the Southern District of Ohio is proper because an exception to Rule 5005(a) permits a trustee to commence a proceeding under Title 11 in a district where under applicable nonbankruptcy venue provisions an action may have been brought. (Intervenor's Mem. in Opp. to Def.'s Mot. to Dismiss 7); *see* 28 U.S.C. § 1409(d).

10

The Defendants, on the other hand, quote language from Bankruptcy Rule 5005(a) stating that bankruptcy adversary proceedings can only be filed "with the clerk in the district where the case under the Code is pending." Fed. R. Bankr. P. 5005(a)(1); *see* (Def.'s Mot. Dismiss 6.) But, rather than analyzing Bankruptcy Rule 5005(a) as a venue provision, the Defendants imply that the Intervenor Plaintiff violated Bankruptcy Rule 5005(a) because he filed his complaint in a district court that lacks personal jurisdiction over the Defendants. *See* (Def.'s Mot. Dismiss 7.) According to the Defendants, the Southern District of Ohio is an improper location for the Intervenor Plaintiff to file his complaint because the Defendants lack minimum contacts with Ohio. *See id.* at 6–7. The Defendants' argument is not well taken.

As already stated, the applicability of the Bankruptcy Rules will determine the correct test for this Court's exercise of personal jurisdiction over the Defendants. *See Med. Mut. Of Ohio*, 245 F.3d at 567–68. The applicability of the Bankruptcy Rules depends in part on the Intervenor Plaintiff filing his complaint in a proper venue. *See* Fed. R. Bankr. P. 5005(a)(1); *see also Thompson v. Greenwood*, 507 F.3d 416, 420 (6th Cir. 2007) ("[I]f a case is brought in an improper venue and an interested party timely objects, a district court has only two options: (1) dismiss the case, or (2) transfer the case to a jurisdiction of proper venue, if it be in the interest of justice."). Bankruptcy Rule 5005(a) establishes the locations where a party can properly file a claim under the Bankruptcy Code. *See* Fed. R. Bankr. P. 5005(a)(1).

Bankruptcy Rule 5005(a)(1) reads in relevant part that "complaints . . . and other papers required to be filed by these rules, except as provided in 28 U.S.C. § 1409, shall be filed with the clerk in the district where the case under the Code is pending." Fed. R. Bankr. P. 5005(a)(1). Under 28 U.S.C. § 1409(d), "[a] trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 . . . in the district court for the district where . . .

11

under applicable nonbankruptcy venue provisions, an action on such claim may have been brought." 28 U.S.C. § 1409(d). The applicable nonbankruptcy provision in this case is 28 U.S.C. § 1391(b), which states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Id.* § 1391(b). Consequently, if a substantial part of the events or omissions giving rise to the present claim occurred in the Southern District of Ohio, then the present case was properly filed in the Southern District of Ohio under Bankruptcy Rule 5005(a). *See* Fed. R. Bankr. P. 5005(a)(1); *see also Hughes v. Sanders*, No. 2:04-CV-744, 2005 U.S. Dist. LEXIS 12259, at *7 n.6 (S.D. Ohio June 23, 2005).

The Intervenor Plaintiff's claims revolve around actions and omissions that took place in the Southern District of Ohio. (Compl. of Intervenor ¶¶ 8, 57–66.) The Defendants conducted extensive business in the Southern District of Ohio with Redhawk. *Id.* ¶¶ 54–56. These business interactions allegedly gave rise to the amount that the Intervenor Plaintiff seeks to recover from the Defendants. *See id.* ¶¶ 57–66. Specifically, under the Defendants' direction, WPI contracted with Redhawk for the completion of a project taking place in Moscow, Ohio. *Id.* ¶¶ 54–56. Through this project, WPI allegedly accumulated a debt to Redhawk of approximately $200,000. *Id.* ¶ 60. Moreover, throughout the project, Defendants Jacomides, Rouse, and O'Shea allegedly failed to advance funds to WPI so that WPI could satisfy its debt to Redhawk. *Id.* ¶¶ 62–65. Given that a substantial part of the events or omissions giving rise to the present claim are claimed to have occurred in the Southern District of Ohio, this Court finds that the Intervenor Plaintiff properly filed his complaint in the Southern District of Ohio. *See* 28 U.S.C. § 1391(b); *see also* Fed. R. Bankr. P. 5005(a)(1).

12

Thus, because this Court properly exercises subject matter jurisdiction over the Intervenor Plaintiff's action under Title 11 and because filing this action in the Southern District of Ohio is proper under Bankruptcy Rule 5005(a), the Bankruptcy Rules apply to the present proceeding.

### 2. Applicability of Bankruptcy Rule 7004(f)

As stated in the previous section, the Bankruptcy Rules apply to the present proceeding. However, the parties dispute whether Bankruptcy Rule 7004(f)—the Bankruptcy Rule that establishes personal jurisdiction through nationwide service of process—applies to the present proceeding. Fed. R. Bankr. P. 7004(f).

Bankruptcy Rule 7001 describes the scope of Rule 7004, providing that "an adversary proceeding is governed by the rules of" Part VII of the Bankruptcy Code; Part VII encompasses Rule 7004. Fed. R. Bankr. P. 7001. In turn, Rule 7001 defines an adversary proceeding as "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee." *Id.* So, for Bankruptcy Rule 7004(f) to apply, the present action must be an adversary proceeding. *See id.*

As evidenced by the Intervenor Plaintiff's multiple demands for compensatory damages from the Defendants, *see, e.g*, (Compl. of Intervenor ¶¶ 89, 94), the present action is "a proceeding to recover money." *See* Fed. R. Bankr. P. 7001. As such, the Intervenor Plaintiff's action is an "adversary proceeding" as defined by Bankruptcy Rule 7001. *See id.* Consequently, Bankruptcy Rule 7004(f) applies to the present action.

13

## B. Personal Jurisdiction Analysis under Bankruptcy Rule 7004(f)

Given that Bankruptcy Rule 7004(f) governs the Intervenor Plaintiff's action, the Court

must apply Bankruptcy Rule 7004(f) to determine if it has personal jurisdiction over the

Defendants. *See* Fed. R. Bankr. P. 7001. Under Bankruptcy Rule 7004(f), "serving a summons or

filing a waiver of service in accordance with [Rule 7004] . . . is effective to establish personal

jurisdiction over the person of any defendant with respect to a case under the [Bankruptcy] Code

or a civil proceeding arising under the [Bankruptcy] Code, or arising in or related to a case under

the [Bankruptcy] Code," provided that "the exercise of jurisdiction is consistent with the

Constitution and laws of the United States." Fed. R. Bankr. P. 7004(f). As established

previously, the Intervenor Plaintiff's complaint against the Defendants includes multiple claims,

all of which either arise under or are related to the Intervenor Plaintiff's case under the

Bankruptcy Code. *See* (Compl. of Intervenor ¶¶ 82–166.) Therefore, this Court can exercise

personal jurisdiction over the Defendants with respect to the Intervenor Plaintiff's action if (1)

the Intervenor Plaintiff has served a summons or filed a waiver of service in adherence with

Bankruptcy Rule 7004 or Federal Rule of Civil Procedure 4 and (2) the Defendants have

minimum contacts with the United States. *See* Fed. R. Bankr. P. 7004(f); *see also Med. Mut. Of

Ohio*, 245 F.3d at 567–68.

The Intervenor Plaintiff certified that he electronically filed his complaint with the

Court's electronic filing system, which sends notifications to the parties' attorneys. (Compl. of

Intervenor 28.) Moreover, the Defendants do not contend that the Intervenor Plaintiff failed to

properly serve a summons or file a waiver of service in adherence with Bankruptcy Rule 7004 or

Federal Rule of Civil Procedure 4. *See* (Def.'s Mot. Dismiss); *see also* (Def.'s Reply (Doc. No.

79.))

14

As to the inquiry of the Defendants' minimum contacts with the United States, the Court makes a finding that the Intervenor Plaintiff has made a *prima facie* showing that each defendant has such contacts. *See* (Compl. of Intervenor ¶¶ 8–11.) Defendants Jacomides, Rouse, and O'Shea live in the United States (Texas, Texas, and Vermont, respectively) and are shareholders of corporations that are incorporated and have principal places of business in the United States. *Id.* Moreover, as the directors and officers of WPI and WPSI, Defendants Jacomides, Rouse, and O'Shea have engaged in business transactions within the United States. *Id.* ¶¶ 44–49. Defendant JRO is incorporated in Delaware and has a principal place of business in Champlain, New York. *Id.* ¶ 8. Through their residency, incorporation, and business activities, the Defendants have sufficient contacts with the United States to justify this Court's exercise of personal jurisdiction over them.

Thus, the pleadings and affidavits on file demonstrate that the Intervenor Plaintiff has complied with the applicable service provisions and that the Defendants have minimum contacts with the United States. Accordingly, the Intervenor Plaintiff has met his slight burden of making a *prima facie* showing that Bankruptcy Rule 7004(f) establishes this Court's personal jurisdiction over the Defendants in the present proceeding. *See* Fed. R. Bankr. P. 7004(f).

## IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** the Defendants' Motion to Dismiss the Complaint of Intervenor Rodney Tow for Lack of Personal Jurisdiction. (Doc. No. 77.)

**IT IS SO ORDERED.**

6-14-2013

**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

15